IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EVANSTON INSURANCE COMPANY,

    Plaintiff,

 v.

AMERICAN SAFETY INDEMNITY COMPANY,

    Defendant.
    /

No. C 10-01472 CW

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT (Docket Nos. 20 and 21)

    Plaintiff Evanston Insurance Company asserts an equitable contribution claim against Defendant American Safety Indemnity Company. Plaintiff moves for partial summary judgment. Defendant opposes Plaintiff's motion and cross-moves for summary judgment that Plaintiff is not entitled to equitable contribution. Plaintiff opposes Defendant's cross-motion. The motions were taken under submission on the papers. Having considered the papers submitted by the parties, the Court GRANTS in part Plaintiff's motion for partial summary judgment and DENIES it in part and DENIES Defendant's cross-motion for summary judgment.

BACKGROUND

    The parties are insurance companies with a common insured, Northern California Universal Enterprise Company (Northern Cal). Northern Cal is a developer which constructed single-family residences in Mendota, California. These homes are at issue in Ayala v. Northern California Universal Enterprise Company, No.

07CECG01000-AMS, a lawsuit pending in Fresno County Superior Court. Plaintiff seeks contribution from Defendant for the costs to defend Northern Cal in the Ayala action.

The parties maintain that the current action raises only legal questions concerning one of the insurance policies Defendant issued to Northern Cal. They stipulate to the facts and evidence described below.

A. Northern Cal's Insurance Policies

Both parties issued general liability policies to Northern Cal. This action concerns only one of Defendant's policies, No. ESL010742-05-01, which was effective September 19, 2005 through September 19, 2006. In particular, the parties dispute the effects of two policy endorsements and one exclusion on Defendant's duty to defend Northern Cal in the Ayala action.

The policy contains a Self-Insured Retention (SIR)[1] Endorsement. The endorsement provides an SIR of $50,000 per occurrence, which applies to "all damages, however caused." Jt. Stip. ¶ 7. The endorsement further states,

> As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, the insured, upon receipt of notice of any "suit", incident or "occurrence" that may give rise to a "suit", and at our request, shall pay over and deposit with us all or any part of the self-insured retention amount as specified in the policy, requested by us, to be applied by us as payment toward any damages or SUPPLEMENTARY PAYMENTS - COVERAGES A AND B incurred in

---

[1] An SIR, which is also referred to as a "retained limit," pertains to "a specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied before there is any coverage under the policy." Forecast Homes, Inc. v. Steadfast Ins. Co., 181 Cal. App. 4th 1466, 1474 (2010) (citation omitted).

2

1  the handling or settlement of any such incident, "occurrence" or "suit".

2

3  Id. Occurrence is defined to mean "an accident, including

4  continuous or repeated exposure to substantially the same general

5  harmful conditions." Jt. Stip., Ex. 2, at 12.

6  The policy also includes a Subcontractor's Warranty

7  Endorsement, which provides,

8  As a condition precedent to coverage for the insured under this policy for injury or damage covered by this policy arising directly or indirectly out of the actions

9  of a subcontractor working directly or indirectly on behalf of the Named Insured and for which the Named

10  Insured becomes legally liable, it is hereby agreed and understood that such subcontractor shall maintain

11  occurrence form general liability coverage covering the work performed by such subcontractor . . . . Such

12  insurance must also include the Named Insured as an Additional Insured. We shall have no obligation for

13  defense or indemnity of any insured for actions of subcontractors if, at any time, all of the terms and

14  conditions of this Endorsement are not satisfied.

15  Jt. Stip. ¶ 8. The endorsement further states, "All other terms,

16  conditions and exclusions under the policy are applicable to this

17  Endorsement and remain unchanged." Id.

18  Finally, the policy contains a Total Prior Work Exclusion,

19  which states,

20   (3) The "occurrence" and resulting injury or damage must result, in its entirety, from "your

21   work" performed during the policy period of this policy:

22

   If the "occurrence" or resulting injury or damage is

23   claimed to have resulted from "your work" first commenced during the policy period of this policy, then the only

24   applicable policy is this policy, regardless of whether "your work" continued beyond the policy period of this

25   policy. If "your work" was performed in part during the policy period of this policy, in part prior to the policy

26   period of this policy, any "occurrence" and resulting injury or damage claimed to result from "your work" will

27   be deemed to have resulted, in its entirety, solely from

28

3

> "your work" prior to the policy period of this policy except if this policy is a renewal of an immediate preceding policy issued by us so that coverage is continuous, without any gap in time, between this policy and the immediately preceding prior policy issued by us, in which case any "occurrence" and resulting injury or damage claimed to result from "your work" will be deemed to have resulted, in its entirety, solely from "your work" in the policy period of the immediately preceding prior policy issued by us.  Under no circumstances shall more than one policy issued by us apply to any "occurrence" and resulting injury or damage, and under no circumstances shall the total limits of insurance applicable to any "occurrence" and resulting injury or damage exceed the lesser of, the limits of this policy or the limits of any prior or subsequent policy issued by us, even if the "occurrence" and resulting injury or damage occurred in, or commenced and concluded, in different policy periods.

Jt. Stip. ¶ 9.  The exclusion further states, "All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged."  Id.

   B.   Underlying Action and Northern Cal's Tender for Defense

The Ayala action was filed on April 2, 2007.  The Ayala plaintiffs allegedly own single-family homes constructed by Northern Cal in Mendota.  They aver that Northern Cal, along with other unknown defendants, "did not construct the property in a workmanlike manner," leading to several defects.  Jt. Stip., Ex. 1 ¶ 15.  They assert claims for strict products liability, breaches of the implied warranties of fitness and merchantability, and negligence.

Twenty-one homes are involved in the Ayala action.  Six of these homes were completed prior to the inception of Defendant's policy.

Northern Cal tendered defense of the Ayala action to Defendant on June 29, 2008.  In a letter dated August 29, 2008, Defendant

4

responded to Northern Cal, stating that it

> agrees to participate in the defense of Northern California Universal in the underlying suit, subject to pay over of the $50,000 Self-Insured Retention ("SIR") under policy number ESL010742-05-01 (eff. 9/19/05-9/19/06) and pay over of the $50,000 SIR under ESL010742-06-02 (eff. 9/19/06-09/19/07), and pursuant to the terms, conditions and/or provisions of the ASIC policies and under a reservation of rights as set forth herein.

Jt. Stip., Ex. 5, at 1. The letter further stated that, once Defendant received "one of the two $50,000 SIR payments," it would "retain attorney Sheila Fix . . . to defend Northern California Universal." Id. The letter then recited the relevant facts of the Ayala action, stating,

> Six (6) of the homes in this litigation were completed prior to the inception of the first ASIC policy period. . . . Fourteen (14) homes in this litigation were completed during the first ASIC policy period (effective 9/19/05-9/19/06). . . . One of the homes in this litigation . . . was completed during the second ASIC policy period (effective 9/19/06-9/19/07).

Id. The letter also detailed various exclusions and endorsements contained in Northern Cal's policy and stated that, by listing these provisions, Defendant "does not intend to waive any of the terms, conditions or defenses available to it under the above referenced policies of insurance, or defenses available under the law." Id. at 10.

In a follow-up letter dated October 16, 2008, Defendant informed Northern Cal that its defense of the Ayala action was dependent on Northern Cal satisfying two conditions precedent. Jt. Stip., Ex. 6, at 1. The first required Northern Cal's payment of one of the $50,000 SIRs. The second involved the Subcontractor's Warranty Endorsement. With regard to this condition, the letter

5

stated,

> As a condition precedent to coverage under the policy, Northern California Universal was required to be named as an additional insured under all of the subcontractor policies. In the event Northern California Universal was not named as an additional insured under all subcontractor policies, then you did not meet your condition precedent relative to this endorsement.

Id. at 3.

Sometime thereafter, Northern Cal informed Defendant of its objection to paying one of the $50,000 SIRs "up front," stating that all "damages and attorneys will ultimately be paid by subcontractor insurers. To the exten[t] they are not, Northern can and will pay up to $50,000 at the end of the settlement process." Jt. Stip., Ex. 7, at 1. In a letter dated February 25, 2009, Defendant responded to Northern Cal's objections, reiterating that payment "of the SIR is a condition precedent to coverage" and that "coverage will not be triggered until at least one SIR is paid." Id. Defendant further restated that Northern Cal also had to satisfy "the condition precedent in the Subcontractors Warranty Endorsement." Id.

On or about October 21, 2009, Northern Cal tendered a check for $50,000 to Defendant to cover one of its SIRs.

In a letter dated June 14, 2010, Defendant acknowledged that Northern Cal had satisfied the condition to pay one of its $50,000 SIRs. However, Defendant indicated that Northern Cal had not yet met the condition under the Subcontractor's Warranty Endorsement. Defendant thus requested documentary evidence that Northern Cal was included as an "Additional Insured" on its subcontractors' policies. Jt. Stip., Ex. 9, at 3. Northern Cal, however,

"obtained no Additional Insured endorsements in its favor from any of the subcontractors that performed work at the development at issue." Jt. Stip. ¶ 11.

Defendant has not paid any defense costs incurred by Northern Cal in the Ayala action. Nor has it returned the $50,000 check tendered by Northern Cal for the SIR.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

## DISCUSSION

Defendant asserts that the Subcontractor's Warranty Endorsement and the Total Prior Work Exclusion preclude coverage for any claims in the Ayala action and, as a result, it does not have a duty to defend Northern Cal. Defendant also maintains that, even if it had a duty, it did not attach until October 21, 2009, the date Northern Cal tendered its check for $50,000.

Plaintiff asks the Court to adjudicate summarily that neither the Subcontractor's Warranty Endorsement nor the Total Prior Work Exclusion bars coverage and that Defendant's duty to defend began to run on June 29, 2008, the date Northern Cal tendered defense of the Ayala action to Defendant.

I.   Existence of a Duty to Defend

A "liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993) (citing Gray v. Zurich Ins. Co., 65 Cal. 2d 263 (1966)).  An "insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages _potentially_ covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 299 (1993) (emphasis in original and citation omitted).  That the duty to defend requires only a showing of a potential for liability is "one reason why it is often said that the duty to defend is broader than the duty to indemnify." Id. at 299.

To show that a duty to defend has attached, an insured "must prove the existence of a _potential for coverage_." Montrose, 6 Cal. 4th at 300 (emphasis in original).  In contrast, to show that no duty exists, "the insurer must establish _the absence of any such potential_." Id. (emphasis in original).  "In other words, the insured need only show that the underlying claim _may_ fall within policy coverage; the insurer must prove it _cannot_." Id. (emphasis in original).

A duty to defend may exist "even where coverage is in doubt and ultimately does not develop." Id. at 295 (citation and internal quotation marks omitted).  "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the

8

insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 655 (2005).

"Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy." Id.

A.  Effect of the Subcontractor's Warranty Endorsement

Defendant maintains that, under the Subcontractor's Warranty Endorsement, Northern Cal's failure to obtain "Additional Insured" endorsements in its favor from any of its subcontractors precludes all coverage under the policy at issue here.

The plain language of the endorsement does not support Defendant's broad reading.  As noted above, the endorsement provides that the requirement that Northern Cal be named as an Additional Insured on its subcontractors' policies is "a condition precedent to coverage . . . under this policy <u>for injury or damage covered by this policy arising directly or indirectly out of the actions of a subcontractor</u> working directly or indirectly on behalf of the Named Insured and for which the Named Insured becomes legally liable."  Jt. Stip. ¶ 8 (emphasis added).  The endorsement later states that Defendant "shall have no obligation for defense or indemnity of any insured <u>for actions of subcontractors</u> if, at any time, all of the terms and conditions of this Endorsement are not satisfied."  Id. (emphasis added).  This language unambiguously restricts the condition precedent to instances in which Northern Cal seeks defense or indemnity for a particular subcontractor's actions.  Defendant's interpretation fails to give effect to the

9

limiting prepositional phrases "for injury or damage . . . arising directly or indirectly out of the actions of a subcontractor" and "for actions of subcontractors." These two phrases, or variants of them, did not appear in the policy at issue in <u>Scottsdale Insurance Co. v. Essex Insurance Co.</u>, 98 Cal. App. 4th 86 (2002), a case Defendant cites. There, the policy provided that one of the "conditions for coverage" was that the insured "will be named as additional insured on all subcontractors general liability policies." <u>Id.</u> at 93-94. The court held this condition to be enforceable and, because the insured was not so named, the policy offered no coverage. <u>Id.</u> at 94-98. Unlike the endorsement here, however, the endorsement in <u>Scottsdale</u> did not limit the requirement to coverage for certain actions.

Defendant's reliance on <u>North American Capacity Insurance Co. v. Claremont Liability Ins. Co.</u>, 177 Cal. App. 4th 272 (2009), is similarly unavailing. That case involved a warranty endorsement, contained in Claremont's policy, nearly identical to the one at issue here, with which the insured had failed to comply. <u>Id.</u> at 276. However, the circumstances of the case are distinguishable from those here. There, North American sought equitable contribution from Claremont for indemnity costs related to a $1.1 million settlement. <u>Id.</u> at 275-76. Following a bench trial, the trial court concluded that, because of the warranty endorsement, Claremont had no liability for $909,574 in damages caused by the insured's subcontractors. See <u>id.</u> at 276, 287-291. The appellate court affirmed the judgment of the trial court. Here, Defendant does not point to any evidence that any or all of the damages

alleged in the <u>Ayala</u> action are attributable to Northern Cal's subcontractors. Indeed, <u>North American</u> supports Plaintiff's position. Notwithstanding that insured's failure to satisfy the warranty endorsement, Claremont was found to be liable for $40,027.55 of the $1.1 million settlement. <u>Id.</u> at 276. This suggests that, here, Defendant is potentially liable for a portion of Northern Cal's loss, giving rise to a duty to defend.

A review of the <u>Ayala</u> complaint confirms a potential for liability. The plaintiffs allege that Northern Cal failed to construct their homes "in a workmanlike manner," which has caused defects. Jt. Stip., Ex. 1 ¶ 15. In turn, these purported defects led to "resultant and consequential damage," including "excessive moisture intrusion through concrete slabs damaging floor coverings, furnishings and personal effects" of the plaintiffs. <u>Id.</u> ¶ 16. Defendant maintains that its policy "does not cover the cost of removing, repairing, or replacing the defective work performed by" Northern Cal. Def.'s Mot. 8. However, the exclusions Defendant cites do not appear to address damage to the <u>Ayala</u> plaintiffs' personal property.[2]

---

[2] Defendant cites the policy's exclusions for property damage to "your product," property damage to "your work," and property damage to "impaired property" or property that has not been physically injured resulting from defects in "your product" or "your work." <u>See</u> Jt. Stip., Ex. 2, CG 00 01 07 98, at 4. "Your product" is defined to mean any "goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by" Northern Cal. <u>Id.</u> at 13. "Your work" is defined to mean "[w]ork or operations performed by you or on your behalf; and . . . [m]aterials, parts or equipment furnished in connection with such work or operations." <u>Id.</u> "Impaired property" refers to "tangible property other than 'your product' or 'your work', that cannot be used or is less useful because . . . [i]t incorporates 'your product' or 'your work' that is known or thought be defective,

11

As in North American, Northern Cal's failure to satisfy the Subcontractor's Warranty Exclusion may limit Defendant's exposure for indemnity costs. However, Defendant has not foreclosed the possibility that, notwithstanding Northern Cal's default, some of the Ayala plaintiffs' claims could be covered by its policy. Accordingly, the Court grants Plaintiff's motion for partial summary judgment with respect to the Subcontractor's Warranty Exclusion and summarily adjudicates that this endorsement does not preclude coverage for all claims in the Ayala action. The Court denies Defendant's motion for summary judgment based on this endorsement.

B. Effect of the Total Prior Work Exclusion

Defendant maintains that, because six of the homes at issue in the Ayala action were completed before the effective date of its policy, the Total Prior Work Exclusion precludes any coverage. Defendant's reading is not supported.

As noted above, the exclusion requires that the "'occurrence' and resulting injury or damage must result, in its entirety, from 'your work' performed during the policy period of this policy." Jt. Stip. ¶ 9. The exclusion explains,

> If "your work" was performed in part during the policy period of this policy, in part prior to the policy period of this policy, any "occurrence" and resulting injury or damage claimed to result from "your work" will be deemed to have resulted, in its entirety, solely from "your work" prior to the policy period of this policy . . . .

Id.

Defendant's argument requires interpreting "occurrence" to

---

deficient, inadequate or dangerous." Id.

12

refer to all the claims asserted in the <u>Ayala</u> lawsuit. In essence, Defendant maintains that, because the <u>Ayala</u> action involves some claims concerning homes on which Northern Cal performed work before the inception of the policy, the exclusion precludes coverage for <u>all</u> claims, including for those homes on which Northern Cal began work during the policy period and completed during the period or thereafter. Under Defendant's theory, had the <u>Ayala</u> lawsuit not included homes worked on or completed before the policy period, Northern Cal would be covered. This reading impermissibly premises coverage on the scope of the underlying lawsuit. As the California Supreme Court has stated, "the third party plaintiff cannot be the arbiter of coverage." <u>Montrose</u>, 6 Cal. 4th at 296.

The exclusion, when read in the context of the policy, unambiguously provides that there is no coverage for claims of injury or damage resulting from work that began or was completed before the policy's effective date. The exclusion focuses on Northern Cal's actions, not on the claims the <u>Ayala</u> plaintiffs chose to include in a single lawsuit. This interpretation is confirmed not only by the exclusion itself, which refers to Northern Cal's work, but by the definition of "occurrence," which is "an accident." Jt. Stip., Ex. 2, CG 00 01 07 98, at 12. Giving the word "accident" its ordinary meaning, it is apparent that an occurrence refers to some act by Northern Cal, not the lawsuit filed by the <u>Ayala</u> plaintiffs.

While some acts of Northern Cal may not be covered, Defendant has not foreclosed the potential for coverage. The <u>Ayala</u> complaint does not allege when the homes were built. And while the parties

13

stipulate to the fact that six of the twenty-one homes were completed before the policy period, they do not indicate when work on the other homes began. Further, Defendant does not offer evidence that an accident caused by Northern Cal's work during the period before the policy's inception caused all the injury or damage alleged in the Ayala suit. As a result, some of the Ayala claims are potentially covered by Defendant's policy, which imposes a duty to defend on Defendant.

Accordingly, the Court grants Plaintiff's motion for partial summary judgment with respect to the Total Prior Work Exclusion and summarily adjudicates that this endorsement does not preclude coverage for all claims in the Ayala action. The Court denies Defendant's motion for summary judgment based on this endorsement. Because neither the Subcontractor's Warranty Exclusion nor the Total Prior Work Exclusion bars coverage, the Court summarily adjudicates that Defendant has a duty to defend Northern Cal.

## II.  Date on which Duty to Defend Attached

As already noted, Defendant's policy at issue here contained a $50,000 SIR, which Northern Cal paid on October 21, 2009. In relevant part, Defendant's SIR endorsement provides that, as "a condition precedent to our obligations to provide . . . defense hereunder, the insured, upon receipt of notice of any 'suit' . . . , and at our request, shall pay over and deposit with us all or any part of the self-insured retention amount as specified in the policy, requested by us . . . ." Jt. Stip. ¶ 7.

Plaintiff does not dispute that the endorsement's language plainly and clearly states that satisfaction of the SIR is a

14

condition precedent to Defendant's duty to defend.  However, Plaintiff maintains that once an SIR is satisfied, an insurer's duty to defend should, as a matter of law, run retroactively to the date an insured made a tender for defense.

Plaintiff relies solely on Montrose, in which the California Supreme Court stated, "The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded."  6 Cal. 4th at 295.  However, the policy in Montrose did not make the insurer's duty to defend dependent on the payment of a self-insured retention, and the court did not consider what impact such a condition precedent would have on when the duty would arise.

In Legacy Vulcan Corp. v. Superior Court, the court addressed the impact of an SIR on an insurer's duty to defend.  185 Cal. App. 4th 677, 694-97 (2010).  It concluded that a provision requiring exhaustion of an SIR does not, on its own, prevent the imposition of duty to defend upon an insurer's tender for defense.  Id. at 696.  However, the court stated, if a policy plainly and clearly states that the insurer's duty to defend is conditioned on the exhaustion of an SIR, the duty will not arise at tender, but rather when such exhaustion occurs.  See id.  "In our view, a true 'self-insured retention,' expressly limits the duty to indemnify to liability in excess of a specified amount and expressly precludes any duty to defend *until* the insured has actually paid the specified amount."  Id. at 694 n.12 (emphasis added).

Legacy Vulcan comports with other California cases interpreting a condition precedent.  In North American, the court

15

summarized that such a condition "refers to an act, condition or event that must occur before the insurance contract becomes effective or binding on the parties." 177 Cal. App. 4th at 289 (citation and internal quotation marks omitted). These conditions "neither confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured in order to obtain the coverage provided by the policy." Id. (citation and internal quotation marks omitted). Here, the policy clearly conditioned Defendant's defense duty on Northern Cal's payment of the SIR. No duty to defend attached until that payment was received, and Montrose does not require otherwise.

Plaintiff asserts that Defendant's SIR endorsement states that Northern Cal's obligation to pay the SIR is not triggered until Defendant makes a request. Plaintiff complains that this construction permits Defendant to "manipulate and postpone" its defense obligations by delaying its request for the SIR.[3] Pl.'s Mot. 14. However, Plaintiff offers no authority or persuasive argument to support its assertion that the plain language of the policy should be disregarded.

Defendant's duty to defend did not arise on the date Northern Cal made its tender for defense. Accordingly, the Court denies

---

[3] Notably, Defendant demanded payment of the SIR in August, 2008, two months after Northern Cal tendered the Ayala action for defense. The SIR was not paid until more than a year later, apparently because of Northern Cal's intransigence. Further, adopting Plaintiff's position could expose an insurer to unwarranted prejudice. An insured could, as here, refuse to pay an SIR until the end of an action. As a result, an insurer could be saddled, through no fault of its own, with defense costs that it had no role in incurring.

16

Plaintiff's motion for partial summary judgment that Defendant is obliged to share with Plaintiff payment of defense costs from the date of Northern Cal's tender of defense.[4]

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part Plaintiff's motion for partial summary judgment and DENIES it in part (Docket No. 20), and DENIES Defendant's motion for summary judgment (Docket No. 21).  It is summarily adjudicated that neither the Subcontractor's Warranty Endorsement nor the Total Prior Work Exclusion preclude coverage for all claims in the Ayala action and, therefore, Defendant has a duty to defend.  The Court denies Plaintiff's motion for partial summary judgment that Defendant became liable for defense costs from the date that Northern Cal offered its tender for defense.  The Court did not rely on any evidence to which Defendant objected.[5]  Accordingly, Defendant's objections are overruled as moot.

The parties shall meet and confer to attempt to agree on Defendant's fair share of defense costs, and arrange for payment thereof.  If the parties reach an agreement, they shall notify the Court and stipulate to Plaintiff's voluntary dismissal of this action.  See Fed. R. Civ. P. 41(a)(1)(A)(ii).  Alternatively, if either or both of the parties wish to appeal this Order, the

---

[4] Defendant did not move, in the alternative, for partial summary judgment on the date on which its duty to defend arose.

[5] Defendant's submission of evidentiary objections in a brief separate from its reply brief violates this Court's Standing Order and Civil L.R. 7-3(c).  In any future filing, Defendant shall comply with this Court's Standing Order and the Civil Local Rules.

17

parties may reach a conditional agreement with respect to the amount of damages and then move for judgment pursuant to Federal Rule of Civil Procedure 54(b).

If they cannot agree on the amount of damages, the parties shall file cross-motions for summary judgment on damages. Plaintiff's motion for summary judgment shall be due April 28, 2011. Defendant's cross-motion for summary judgment and opposition to Plaintiff's motion shall be due May 12, 2011. Plaintiff's opposition to Defendant's cross-motion and reply in support of its motion shall be due May 19, 2011. Defendant's reply in support of its cross-motion shall be due May 26, 2011. A hearing on these motions and a further case management conference will be held on June 9, 2011 at 2:00 p.m., unless the issue is taken under submission on the papers.

IT IS SO ORDERED.

Dated: 2/10/11

CLAUDIA WILKEN
United States District Judge